Common Pleas Court of Cuyahoga County.

DRAKE BAKERIES, INC. V. DILLARD C. BOWLES, ET AL.

Decided February 14, 1934.

*Stanley & Smoyer*, for plaintiff.
*Orgill, Maschke and Wickham*, for defendants.

McMAHON, J.

This matter came on to be heard upon an agreed statement of facts, plus oral testimony consuming several days of time. After a complete and thorough consideration of all the evidence, reading of briefs, and argument of counsel for both sides, the court makes the following finding:

That the plaintiff is a corporation doing business in the city of Cleveland; that at all times herein mentioned in addition to the 18 driver salesmen involved in this lawsuit, said company employed about 100 other employees; that it had a payroll of approximately $2,000 a week, from which about 100 families obtained their livelihood. From the testimony the court gathers that the company in this community had a business whereby it expended in the neighborhood of $200,000 a year in accounts payable; that it had about 2,000 customers in the vicinity of Cleveland, Ohio,

and transacted about a $400,000 business in the sale of its merchandise each year. This, approximately, was the condition of the plaintiff company on or about the 22nd day of December in the year 1933. On the 20th day of January, 1934, it closed down its business, claiming that it could no longer operate under the methods adopted on the part of the combined efforts of all the defendants named herein in conducting a strike directed at this plaintiff company.

The testimony does show about as follows:

That during the course of the strike from the 22nd day of December until January 20th, a large amount of property was damaged. Trucks were upset on the highway, merchandise ruined, plate glass windows of customers who were the owners of grocery stores, delicatessen stores, and the like, were broken in the night time, and intimidations, threats and other acts of assault and violence were likewise committed and the police force of the city was called upon to preserve order, due to the general disorder that had prevailed attending the strike conditions.

It further appears to the court that three months before December 22nd, 1933, that ten of the sixteen driver salesmen of the plaintiff company joined what is known as Bakery Drivers Local Union No. 52. Shortly thereafter several of them resigned or refused to participate in Union activities or refused to pay dues. Three or four of the original sixteen driver salesmen of the plaintiff company refused to join the Local Union and indicated their desire not to do so and of the 16 men involved in this lawsuit as driver salesmen so far as the Union is concerned this was about their standing on the 21st day of December of 1933 at the time of the calling of the strike.

The court finds from all the testimony that there was no dispute at any time as to the wages that the men received nor the hours that they worked or general working conditions. The plaintiff company complied with and had signed up under the provisions of the N. I. R. A. and the only dissension that existed was the refusal on the part of the plaintiff company to comply with the demands of the defendant Bowles, named herein, the business agent of the

Local Union No. 52, to employ its members exclusively as driver salesmen on the part of the company. No employees who joined the Union ever were dismissed and the facts as given to the court are to the effect that at no time did the company discourage or attempt to restrain or influence its driver salesmen not to join the Local Union and after some had joined those that did join received the same treatment as those who did not join. There was some evidence that Manager Wood, of the plaintiff company, had called meetings. The court finds, however, that those were meetings regularly held in the sales room for the purpose of educating and instructing the driver salesmen in the company's business, and whenever the question of N. I. R. A. arose it was for the purpose of discussing the relations that the act might have as to the company and the men. Some evidence as to Manager Wood making certain remarks derogatory to the Union were offered in evidence. The court does find that whatever he did say was said after the strike was called and after the commission of violence and unlawful acts had taken place. The strike was ordered December 21st by the Business Agent, defendant Bowles, without any consultation or reference or advice with his superior, he claiming that he had full authority to order the strike whenever he desired to do so regardless of conditions. After the strike was called it is conceded that trucks of the plaintiff company were followed, coercion was used, some of those trucks were upset and the merchandise destroyed, merchants were intimidated and windows of customers of the plaintiff company who were in the grocery and delicatessen business were destroyed in the night time, "although this concession did not admit that the individual defendants were the perpetrators," and that such violence was in furtherance of this strike. Counsel have agreed upon and have filed with the court a stipulation of facts which reads as follows:

"The defendants through their counsel concede that some of the acts of violence and intimidation against the plaintiff, its customers and employees, occurred as set forth in plaintiff's amended and supplemental petition and by certain members of the class of defendants sued herein (without, however, admitting that they were committed by the

individual defendants charged in the amended and supplemental petition with their commission) and that said acts were committed in furtherance of the strike described in the amended and supplemental petition, and that said acts tended to injure plaintiff's property, trade and good will.

"Further, that in these respects a permanent injunction should issue in proper language as against all forms of violence, destruction of property and intimidation against the plaintiff, its employees and customers.

"That many grocer customers throughout the city became informed of said breaking of the windows of grocer customers of the plaintiff. About the same time members of the defendant class called upon certain other grocer customers who continued to use the goods of the plaintiff and demanded that they display certain placards purchased by the bakers local union containing the language:

'WE WILL NOT HANDLE DRAKE'S PRODUCTS UNTIL THEIR LABOR TROUBLE IS SETTLED.'

"prominently in their store windows and that many but not all of plaintiff's grocer customers acceded to the demands of the defendants and permitted said placards to be displayed in their store windows.

"It is further stipulated between counsel that evidence if introduced by the plaintiff would tend to show that during the duration of the strike, Drake trucks were followed in the course of their business by automobiles either owned or driven by members of the class of defendants through the streets and to the various business places where the plaintiff was delivering or attempting to deliver goods.

"It is further stipulated between the parties that plaintiff has no adequate remedy at law for the relief of the acts complained of in the petition.

"It is further stipulated that at all times, including the month of September and to this date, the Drake Bakeries, Inc., the plaintiff, were subject to and they had agreed in writing to abide by codes executed by them and other employers engaged in the bakery business under the provisions of NRA and NIRA, including specific agreements to abide by and conform to the labor provisions of said Act which are 5-A and 7-A thereof."

So that by consent of parties the restraining order prayed for is granted in accordance with such stipulation.

The only remaining question for the court to determine is the right to strike on the conditions found from all of the evidence, while plaintiff company is operating under

the contract made with the government under the provisions of 5-A and 7-A of the N. I. R. A.

Defense counsel's only contention, as gathered from argument and brief, is to the effect that the defendants have a right to peaceably picket the premises of the plaintiff company and peacefully discuss and persuade drivers to leave its employment and join the Union. No one takes issue with that statement of the law provided a strike was lawfully called and under the proper conditions, but not so where the demands require the commission of an unlawful act upon the part of the employer. The court refers only to the picket situation and does not wish to convey the idea that employes are immune from peaceable persuasion to join the union. That is always proper if done in a lawful manner. So that, in summarizing, the court finds that the N. I. R. A. passed in June of 1933 when signed up and the code accepted on the part of an employer of labor, a binding contract is entered into until the expiration of such Act, which is sometime in June of 1935, subject, of course, to all amendments or future additions that might be passed or imposed.

This brings us squarely up to the provisions of 5-A and 7-A of the Act as to the rights of the parties in this action.

7-A is as follows:

"Every code of fair competition, agreement, and license approved, prescribed, or issued under this title shall contain the following conditions: (a) That employees shall have the right to organize and bargain collectively through representatives of their own choosing, and shall be free from the interference, restraint, or coercion of employers of labor, or their agents, in the designation of such representatives or in self-organization or in other concerted activities for the purpose of collective bargaining or other mutual aid or protection; (2) that no employees and no one seeking employment shall be required as a condition of employment to join any company union or to refrain from joining, organizing, or assisting a labor organization of his own choosing; and (3) that employers shall comply with the maximum hours of labor, minimum rates of pay, and other conditions of employment, approved or prescribed by the President."

5-A is as follows:

"While this title is in effect (or in the case of a license, while section 4(2) is in effect) and for sixty days thereafter, any code, agreement, or license approved, prescribed, or issued and in effect under this title, and any action complying with the provisions thereof taken during such period, shall be exempt from the provisions of the antitrust laws of the United States.

"Nothing in this Act, and no regulation thereunder, shall prevent an individual from pursuing the vocation of manual labor and selling or trading the products thereof; nor shall anything in this Act, or regulation thereunder, prevent anyone from marketing or trading the produce of his farm."

Now in the instant case the position of defendant Bowles, the Business Agent of this Union, is that under the N. I. R. A. if a majority of the drivers of plaintiff company chose the Union to represent them, the minority of the employees would, under the Act, be compelled to surrender their representation to the Union, and also to join the Union or quit their employment.

There is nothing in 5-A or 7-A which permits of such a construction. Indeed, such construction violates the express language of 7-A-(1). By the express language of that section the representation must be "of their (the employees) own choosing." There is no mention of majority of employees controlling the minority in any part of the Act. Furthermore, such a construction is violative of Section 5-A which provides in part "nothing in this act and no regulation thereunder shall prevent an individual from pursuing the vocation of manual labor and selling or trading the products thereof." An individual's right to work is an inherent property right.

The court refers to a quotation taken from General Johnson and also from Mr. Donald Richberg, whom everyone concedes to be an authority in placing interpretations and constructions upon the N. I. R. A.

"This can mean only one thing (referring to the language in Sections 7-A and 5-A) which is that employees can choose any one they desire to represent them, or they can choose to represent themselves. Employers likewise can

make collective bargains with organized employees, or individual agreements with those who choose to act individually; provided, of course, that no such collective or individual agreement is in violation of any State or Federal law. But neither employers nor employees are required, by law, to agree to any particular contract, whether proposed as an individual or collective agreement."

And a quotation from General Johnson on September 4, 1933:

"It is simply not true that the Recovery Act imposes on labor any particular form of organization or any particular representation. Any man can choose to bargain individually or collectively, and the idea that a man can be compelled or even influenced to join a company union or any other union is absolutely negatived by the plain words of this statute."

The New Jersey State Court, in placing an interpretation upon 7-A in the case of *Bayonne Textile Corporation* v. *American Federation of Silk Workers, et al,* 168 Atl. 799, says as follows:

"Syl. 8: Labor does not need to resort to strike measures to remedy alleged grievances since the establishment of N. I. R. A. and N. R. A., under which mediation forums have been created to effect equitable adjustments thereof between an employer and its employees; and the court will take judicial notice of such forums.
"Syl. 9: Where, as in the case *sub judice,* the proofs manifest that the purpose of the defendants, and the real object of the strike instigated by them, is to compel complainant, by interfering with the lawful conduct of its business and resorting to unlawful practices to accomplish their purpose and object, to submit to defendants attempt to obtain for a labor union a complete monopoly of the labor market in the industry in which complainant is engaged, by forcing all employees who wish to work for it to join the union, and by forcing it to agree not to employ workers in its factory, except upon such terms as it can make with the combination which seeks to control all labor in such industry, such purpose and object is unlawful."

To the same effect are:

*Elkind and Sons, Inc.* v. *Retail Clerks, etc.* 169 Atl. 494; *Lichtman & Sons* v. *Leather Workers Union,* 169 Atl. 498.

And from all of the facts then as the court sees them it was the intention of the combined effort on the part of all these defendants to force the plaintiff company to violate its contract, to-wit, the N. I. R. A. Code, and such intention is wrongful, so it follows then that a combination for such a purpose is, while there is no justification for it, a combination to do something which is wrongful.

The plaintiff company in this action is bound by contract to the observance of Section 7-A and 5-A hereinbefore mentioned, which forbids the kind of a contract known as Exhibit "A" and "B" in this lawsuit between employers and employees, and the strike to induce this plaintiff company to breach its contract is unlawful.

It follows that an injunction in this case should issue restraining a continuation of all strike activities.

7-A and 5-A mean just what they recite. They have an obvious purpose and it is just this: That the employer shall not be required to sign an agreement to employ only union labor carrying cards such as were submitted to this plaintiff company as per Exhibit A and Exhibit B. It would destroy the right of an individual or of an employee under the National Recovery Act.

The court does find from all of the evidence at hand that there was a lack of judgment on the part of defendant Bowles, the Business Agent, in the instant case. Also a lack of cooperation on his part under the National Recovery Act. There was no necessity under existing economic conditions to call a strike. If his demands upon the plaintiff company to sign Exhibit A and B were reasonable or justified in any manner it could have been accomplished without the loss of work to over one hundred employees or loss to the company of its business and the destruction of property and the violence perpetrated upon many others, by resorting to other agencies that could have been set up for that purpose.

The court, therefore, is of the opinion that this restraining order should be granted as prayed for in plaintiff's petition. A bond for appeal will be placed after the court consults with counsel on both sides. Order See Journal.